IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HERBERT RESNIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PATRICIA A. WOERTZ, STEVEN R. MILLS, | ) | |
| DAVID J. SMITH, JOHN D. RICE, EDWARD A. | ) | |
| HARJEHAUSEN, LEWIS W. BATCHELDER, | ) | |
| GEORGE W. BUCKLEY, MOLLIE HALE | ) | |
| CARTER, DONALD E. FELSINGER, VICTORIA | ) | |
| F. HAYNES, ANTONIO MACIEL NETO, | ) | |
| PATRICK J. MOORE, THOMAS F. O'NEILL, | ) | |
| KELVIN R. WESTBROOK, and ARCHER- | ) | |
| DANIELS-MIDLAND COMPANY, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ARCHER-DANIELS-MIDLAND COMPANY, | ) | |
| | ) | |
| | ) | |
| Nominal Defendant. | ) | |

## VERIFIED SHAREHOLDER COMPLAINT

Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation

made by and through his attorneys, except as to those allegations that pertain to the Plaintiff

himself, which are alleged upon knowledge, as follows:

## JURISDICTION AND PARTIES

1.     The jurisdiction of this Court is founded upon: (a) federal question jurisdiction,

pursuant to § 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15

U.S.C. § 78aa, and 28 U.S.C. § 1331; (b) diversity of citizenship, 28 U.S.C. § 1332; and (c)

supplemental jurisdiction, 28 U.S.C. § 1367(a). The plaintiff is a citizen of the State of New

York. The defendants except defendant Thomas F. O'Neill ("O'Neill") are all citizens of

jurisdictions other than New York. The matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs. No claim of diversity jurisdiction is made as to

defendant O'Neill. Defendant O'Neill is a Defendant in Counts I and II only, which assert

exclusively federal causes of action and are not predicated upon diversity jurisdiction.

2.       The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a),

and Rule 14a-9, 17 C.F.R. § 240.14a-9, of the Securities and Exchange Commission (the "SEC")

promulgated thereunder, SEC Schedule 14A, 17 C.F.R. § 240.14a-101, SEC Reg. S-K (Item

402), 17 C.F.R. § 229.402 (Feb. 4, 2008), and the laws of Delaware. In addition, § 162(m) of the

Internal Revenue Code ("IRC" or the "Code"), 26 U.S.C. § 162(m), and the Treasury Regulation,

26 C.F.R. § 1.162-27, are applicable.

3.       Plaintiff brings this action directly and derivatively to recover specific equitable

relief for the false or misleading 2009 Proxy Statement, filed by the Company with the SEC on

September 25, 2009 (the "Proxy Statement") that failed to comply with the Exchange Act, SEC

Regulations, Treasury Regulations, and Delaware law governing the contents of proxy

statements and for the Defendants Woertz's, Mills', Smith's, Rice's, Harjehausen's,

Batchelder's, Buckley's, Carter's, Felsinger's, Haynes', Neto's, Moore's and Westbrook's

breaches of fiduciary duty under Delaware law. The Proxy Statement solicited stockholder

approval of the Archer-Daniels-Midland Company 2009 Incentive Compensation Plan (the

"2009 Plan") at the annual meeting of the stockholders of the Company held on November 5,

2009.

2

4.      Plaintiff is a stockholder of Archer-Daniels-Midland Company ("ADM" or the "Company") and was a stockholder at the time of the wrongs alleged herein, and has been such continuously since then.

5.      The Company is a corporation organized under the laws of the State of Delaware.

6.      Defendant Patricia A. Woertz is the Company's president and its chief executive officer ("CEO"). She is also a member and the chairman of its board of directors.

7.      Defendants George W. Buckley, Mollie Hale Carter, Donald E. Felsinger, Victoria F. Haynes, Antonio Maciel Neto, Patrick J. Moore, Thomas F. O'Neill, and Kelvin R. Westbrook are, along with Defendant Woertz, all the members of the Company's board of directors (the "Board").

8.      Defendants Patricia A. Woertz, Steven R. Mills, David J. Smith, John D. Rice, Edward A. Harjehausen are, and, until November 6, 2008, Lewis W. Batchelder was one of the Company's Named Executive Officers as defined in 17 C.F.R. § 229.402(a)(3), Covered Employees as defined in Internal Revenue Code § 162(m)(3), and Officers as defined in 10 Del. C. § 3114(b).

9.      This action is not a collusive one to confer jurisdiction that the court would otherwise lack. This action does not allege securities fraud or any other fraud. It does not seek to recover damages, but rather specific, equitable relief. This is an action based on the false or misleading Proxy Statement and on breach of fiduciary duty.

## WRONGFUL ACTS AND OMISSIONS

10.     In connection with the acts, omissions, conduct, and wrongs alleged herein, defendants used the mails and the means or instrumentalities of interstate commerce in committing the wrongs alleged herein.

11.     IRC § 162(m) subjects the Company to special treatment with respect to its
compensation of the Covered Employees, sometimes referred to as the Named Executive
Officers by the SEC. Whereas IRC § 162(a)(1) allows the Company as an income tax deduction
"a reasonable allowance for salaries or other compensation for personal services actually
rendered" by its employees, IRC § 162(m) imposes restrictions on that deduction for the
compensation of the Company's Covered Employees. The Covered Employees, as defined in
IRC § 162(m)(3) are the CEO and those officers whose total individual compensation is, under
the Exchange Act, required to be reported to the stockholders each year. Currently this is
reported in the annual proxy statement. Compensation paid to the Company's Covered
Employees in excess of $1 million per year each is not properly deductible if not in compliance
with the requirements of IRC § 162(m) and Treas. Reg. § 1.162-27.

12.     Specifically, IRC § 162(m) provides that annual compensation in excess of $1
million is not tax-deductible unless the compensation is performance-based, pursuant to a plan
containing objective criteria that the stockholders have approved. Under the tax regulations
performance goals are objective only if a "third party having knowledge of the relevant facts
could determine whether the goal is met." 26 CFR § 1.162-27(e)(2). Congress enacted IRC §
162(m) as part of its historic effort to regulate corporate affairs in favor of stockholders and other
investors, as a counterweight to the policies of many states to regulate corporations in favor of
officers, directors, and other insiders. Here, Congress employed the tax code as an instrument of
corporate governance. As the Joint Committee on Taxation said, *"The $1 million deduction
limitation reflects corporate governance issues regarding excessive compensation, rather than
issues of tax policy."* Joint Committee on Taxation, Report of Investigation of Enron
Corporation and Related Entities Regarding Federal Tax and Compensation Issues and Policy

Recommendations, 2003 WL 25599037 n.2211 and accompanying text (2003).  As a part of the Tax Code, IRC § 162(m) is construed like other Tax Code provisions.

13.     Tax deductions are a matter of legislative grace and are to be construed narrowly unless the text of the statute authorizing the deductions reflects a different congressional intent. The statute at bar reflects no congressional intent for a broad construction; to the contrary, the tax deduction for compensation must be reasonable, IRC § 162(a)(1), and  IRC § 162(m) disallows that deduction for publicly held companies in excess of $1 million to the Covered Employees.  The exception to the disallowance is for a narrow set of programs, strictly compliant with the statute and the regulations, and approved by the stockholders.  As set forth herein, ADM's 2009 Plan and its implementation of the 2009 Plan do not meet the exacting standards of the IRC and the regulations.

14.     The Company's last fiscal year ended June 30, 2009.  On October 30, 2009, it had 642,352,430 shares of stock issued and outstanding.  The Company's stock is traded on the New York Stock Exchange and the Frankfurt Stock Exchange.  ADM is the world's largest processor of soybeans, corn, wheat and cocoa. ADM works with farmers across the world to turn these crops into soymeal and oil, corn sweeteners, flour, cocoa and chocolate, ethanol and biodiesel, as well as a wide portfolio of other value-added food ingredients, animal nutrition and industrial products.

15.     The individual defendants who were members of the Company's Board on or around September 25, 2009, authorized the distribution of the Proxy Statement by means of which they solicited the proxies of ADM's stockholders for, *inter alia*, the re-election of defendants Buckley, Carter, Felsinger, Haynes, Neto, Moore, O'Neill, Westbrook, and Woertz to the board of directors; the ratification of the appointment by the Board of Directors of Ernst &

5

Young LLP as independent auditors to audit the accounts of the Company for the fiscal year ending June 30, 2010; and the approval of the 2009 Plan.

16.     All the defendants permitted the use of their names in the Proxy Statement to solicit proxies.

17.     The previous plan, the 2002 Incentive Compensation Plan the ("2002 Plan"), applied only to Employees. The directors for the first time seek to add themselves and consultants and advisors to the group of persons eligible to participate in the 2009 Plan.

18.     The 2009 Plan applies to all Employees, Non-Employee Directors, Consultants and Advisors. The Proxy Statement represents that, as of September 25, 2009, the number of Employees at ADM is approximately 28,200 and the number of Non-Employee directors is nine, but it omits to disclose the number of Consultants or Advisors covered by the Plan, in violation of 17 C.F.R. § 240.14a-101 (Item 10(a)(1)).

19.     Item 10(a)(1) of 17 CFR § 240.14a-101, states that "If action is to be taken with respect to any [compensation] plan pursuant to which cash or noncash compensation may be paid or distributed, [registrants much] furnish the following information:  (a) Plans subject to security holder action. (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, *indicate the approximate number of persons in each such class, and state the basis of such participation.* (emphasis added). By contrast, the Proxy Statement, does not state any number (let alone an approximate one) of persons who would be considered "consultants" or "advisors." The Proxy Statement only states that "[t]he company currently has nine non-employee directors and the company and its affiliates currently have approximately 28,000 employees eligible to participate in the 2009 Plan," but does not state the approximately number of consultants and advisors, nor whether the

28,000 number includes consultants and advisors.   Neither does the Proxy Statement state the basis of a consultant's participation in the 2009 Plan.

20.     In addition to increasing the number and classes of persons who will be eligible to participate, the 2009 Plan significantly increases the maximum awards the participants may receive.  Below is a comparison of the 2002 Plan and the 2009 Plan.  Except for the Number of Shares Available for Issuance, which is in reference to the duration[1] of the Plan, all the figures are for each individual participant for one year:

|  | 2009 | 2002 |
|---|---|---|
| Number of Shares Available for Issuance[2] | 31,347,254 | 25,000,000 |
| Stock Options | 2,000,000 | 1,000,000 |
| Stock Appreciation Rights | 2,000,000 | 1,000,000 |
| Restricted Stock Units | 1,000,000 | 500,000 |
| Performance Share Units | 1,000,000 | N/A |
| Performance Units Maximum Payout | $10,000,000 | $2,000,000 |
| Cash-Based Awards | $10,000,000 | $2,000,000 |
| Other Stock-Based Awards[3] | 1,000,000 | N/A |
| Other Maximum Payout | $10,000,000 | N/A |

21.     The Proxy Statement represents that the affirmative vote of the holders of a majority of the outstanding shares of common stock of the Company is required for approval of the 2009 Plan.  The Proxy Statement also alerts the stockholders that a copy of the 2009 Plan is attached and that the "discussion [there] is qualified in its entirety by reference to the full text of the 2009 Plan."  The 2009 Plan contains no condition that it be approved by the affirmative vote

---

[1]     The 2009 Plan endures until all the shares are issued unless the board terminates it before then.

[2]     Share underlying awards that expire without exercise or that are settled for cash are not included in the 31,347,254 maximum of shares available for grants, and may underlie later awards.

[3]     These are awards that are valued in whole or in part by reference to, or are otherwise based on and/or payable in, shares of common stock of the company.  Awards may be settled in cash, shares of common stock of the Company or a combination thereof.

of the holders of a majority of the outstanding shares of common stock of the Company and only

states that "[t]he Plan shall become effective as of November 5, 2009 (the 'Effective Date'), and

shall remain in effect as provided in Section 1.3 hereof." By contrast, the 2002 Plan explicitly

states that the 2002 Plan shall become effective as of December 1, 2002, "*[s]ubject to approval*

*by the Company's Stockholders.*" (emphasis added). Accordingly, there is a conflict between

the representation in the Proxy Statement and the terms of the 2009 Plan, and it is impossible for

a stockholder to understand the effect of a vote. This does not inform the stockholders but,

instead, challenges their critical wits.

22.     With respect to the solicitation of proxies for the 2009 annual meeting of

stockholders, the Proxy Statement contained materially false or misleading statements and

omitted material facts, as set forth herein. As a result, the Proxy Statement deprived the

stockholders of the ability to assess the information provided therein for the purposes of voting

for the 2009 Plan and rendered the stockholders unwitting agents of self-inflicted damage.

23.     Because the Proxy Statement proposes the approval of the 2009 Plan, SEC

Schedule 14A, 17 C.F.R. § 240.14a-101 (Item 8(b)) requires the Proxy Statement to disclose the

information required by 17 C.F.R. § 229.402(b)(2)(xii), which is the "impact of the accounting

and tax treatments of the particular form of compensation" for the Named Executive Officers.

The Proxy Statement represents that elements of the "FY09 annual and long-term incentive

awards are designed to be performance-based and comply with 162(m)." This representation is

materially false or misleading because the tax-deductibility of ADM's awards expired in 2007.

24.     Under Treas. Reg. § 1.162-27(e)(4)(vi) and the official examples contained

therein, the stockholders must reapprove the performance goals in order for the payments to be

tax deductible if, after their initial approval, the compensation committee has authority to change

8

the targets under those performance goals. If the compensation committee has such authority, the material terms of the performance goals must be reapproved by the shareholders no later than the first shareholder meeting that occurs in the fifth year following the year in which shareholders previously approved the performance goals. *Id.* The 2002 Plan gave the compensation committee such authority.

25.     No such timely shareholder reapproval was requested or obtained, as mandated by Treas. Reg. § 1.162-27(e)(4)(vi). After the 2002 Plan became effective on December 1, 2002, no Company stockholder reapproval of the 2002 Plan was sought or obtained by the Company or its Board. In 2004, the Company submitted to the stockholders for approval an Amendment to the 2002 Plan, which related to a new performance measure to receive favorable tax treatment in accordance with Section 162(m) of the Internal Revenue Code. However, the Proxy Statement only asked for approval of this small Amendment, not reapproval for the full plan and the performance measures set forth therein. The 2004 proxy statement was not sufficient to secure this timely reapproval because the ADM board of directors did not ask the ADM stockholders to re-approve the amended 2002 Plan. Because the ADM board did not seek and obtain stockholder reapproval of the 2002 Plan by 2007, none of the 2002 Plan compensation paid for fiscal years ended 2007, 2008, or 2009, or to be paid for fiscal year ending 2010, to the Covered Employees in excess of $1 million per year was or will be properly tax-deductible under IRC § 162(m).

26.     The Proxy Statement informs the stockholders that compensation in excess of one million dollars paid to each Named Executive Officer would not be tax deductible unless it were to be based on their performance pursuant to a plan approved by the stockholders. The Proxy Statement also represents that, if the 2009 Plan were to be approved by the stockholders, the

Named Executive Officers' compensation in excess of $1 million under the 2009 Plan would be deductible by the Company for federal income tax purposes. But because of defects in the 2009 Plan and misrepresentations and omissions in the Proxy Statement, awards under the 2009 Plan will not be tax-deductible even if the stockholders approve it.

27.     The Proxy Statement was materially false or misleading in that it omitted to disclose, with specificity, the material terms and provisions under which the incentive compensation is to be paid, as required by IRC § 162(m)(4)(C)(ii). The House Conference Report, H.R. Conf. Rep. 103-213 at *588, 1993 WL 302291 (Aug. 4, 1993), reciting the intent of Congress in passing IRC § 162(m)(4)(C)(ii), states:

> In developing standards as to whether disclosure of the terms of a plan or agreement is adequate, the Secretary [of the Treasury] should take into account the SEC rules regarding disclosure. To the extent consistent with those rules, however, disclosure should be as specific as possible.

The Treasury Regulations expressly refer to the applicability of the SEC regulations. Treas. Reg. § 1.162-27(e)(4)(v).

28.     Under the 2009 Plan, the performance measures may be based on one or more of the following predetermined business goals as defined in the 2009 Plan: (a) earnings per share; (b) net income (before or after taxes); (c) return on assets, net assets, equity, investment or capital; (d) cash flow, cash flow per share and cash flow return on investments, which equals net cash flows divided by owner equity; (e) earnings before or after any one or more of taxes, interest, depreciation and amortization; (f) gross revenues; and (g) share price (including, but not limited to, growth measures and total stockholder return). Under the 2009 Plan the Committee responsible for administering the 2009 Plan may define the manner of calculating the performance criteria it chooses to use in any performance period, including the use of undefined

and unexplained "non-GAAP" adjustments to such criteria. The 2009 Plan, according to its terms, provides that the Committee has the discretion to award bonuses that will be deductible under 26 U.S.C. § 162(m), which means that the achievement of a bonus must be substantially uncertain at the time the Committee establishes the formula.

29.     The Proxy Statement does not disclose whether the 2009 Plan requires improvement in performance in order for a Covered Employee to achieve a bonus. And the performance goals are not adequately defined in reference to entries on the Company's financial statements, Generally Accepted Accounting Principles ("GAAP"), or, where based on non-GAAP measures, how those performance goals are to be calculated. The 2009 Plan's lack of specificity in setting performance goals means that the 2009 Plan is not an objective plan, and therefore its bonuses are not tax-deductible. With these defects in the 2009 Plan, the proxy statement is false to represent that the 2009 Plan is intended to comply with IRC § 162(m).

30.     To the extent that the Treasury Regulations are supplemented by the SEC Regulations, Treas. Reg. § 1.167-27(e)((4)(v), the SEC requires that a proxy statement must either disclose targets or discuss how difficult it will be for the company to achieve the undisclosed target levels. 17 C.F.R. § 229.402(Instruction 4). Moreover, the proxy statement must also disclose how non-GAAP target levels are calculated from the audited financial statements. 17 C.F.R. § 229.402(Instruction 5). These omissions are unlawful under 15 U.S.C. § 78n(a).

31.     Within the first 90 days of fiscal year June 30, 2010, the compensation committee of the Company's board set the targets for annual incentives under the 2009 Plan. But the proxy statement omitted to disclose these targets even though they were readily available on the date of

the annual meeting on November 5, 2009. Nor did it disclose how difficult it will be for the executive or how likely it will be for the Company to achieve those undisclosed targets.

32.     The Proxy Statement is also materially false or misleading in that it omits to disclose the approximate number of persons in the class of 2009 Plan participants who are consultants or advisors. The Proxy Statement only states the total number of employees and non-employee directors eligible to participate in the 2009 Plan. Without disclosing the number of consultants and advisors, it is impossible for a stockholder to determine how many eligible participants will be receiving payments. This information is expressly required by Item 10(a)(1) of SEC Schedule 14A, 17 C.F.R. § 240.14a-101 (Item 10(a)(1)). It also omits to state the basis upon which Non-Employee Directors and consultants will be eligible to participate, as also required by Item 10(a)(1) of SEC Schedule 14A. These are material and actionable omissions.

33.     As alleged, *infra*, the maximum award under the 2009 Plan is too high to qualify as reasonable compensation, which is a prerequisite to sustaining a deduction under IRC § 162(a)(1). Corporate executive compensation is not tax deductible unless it meets the requirements of both IRC § 162(a)(1) and (m)(4). Treas. Reg. § 1.162-27(a). And it is too high to be a realistic maximum for performance based compensation as required by Treas. Reg. § 1.162-27(e)(4)(i). As a practical matter it is so high that it is the same as not having a maximum award. This high, unrealistic, illusory maximum renders awards non-tax-deductible.

34.     All the defendants were knew or should have known that they were making misrepresentations concerning the deductibility of the incentive payments under the 2002 Plan and the 2009 Plan.

12

35.     All the defendants knew or should have known that they were omitting the terms and provisions of the performance goals which were required to be disclosed in order to qualify for the tax deduction under IRC § 162(m).

36.     Defendants' acts and omissions have caused injury to the Company and its stockholders.

37.     Under Delaware law, as members of the board of directors of the Company, the individual defendants owe a fiduciary duty of loyalty, including good faith and fair and full disclosure, to the Company. Each of the director defendants has breached those duties.

38.     The director defendants also breached their fiduciary duty of loyalty, including good faith, to maximize tax benefits and not to compensate themselves excessively.

39.     Under Delaware law, the officer defendants owe the Company the same fiduciary duties as do the director defendants. All the directors and officer defendants owe fiduciary duties to the Company not to take improperly paid compensation, such as bonuses under a plan that was insufficiently disclosed to the stockholders who were solicited to approve it. Acceptance of such bonuses also constitutes unjust enrichment.

40.     The board's payment of compensation that is not properly tax-deductible constitutes waste. As Learned Hand, Felix Frankfurter, and others have famously stated, there is no patriotic duty to arrange your business so as to increase your taxes, because taxes are enforced exactions, not voluntary contributions. And the prospect of higher taxes is one way that the Government uses to discourage antisocial conduct. For example, the Emergency Economic Stabilization Act, Pub. Law 110-185, seeks to control corporate executive compensation at companies receiving federal assistance by providing that annual payments in excess of $500,000 are not deductible. The exercise of this authority to pay compensation, even if tax-deductible,

would also constitute waste. The maximum number of shares that can be issued, to all participants, is 30,000,000, plus 1,347,254 shares remaining from the 2002 Plan, up from 25,000,000 from the 2002 Plan. The maximum performance units payout increased from $2,000,000 to $10,000,000 and the maximum cash-based awards also increased from $2,000,000 to $10,000,000. The total maximum incentive compensation, using the stock price given in the Proxy Statement ($29.01 per share, on September 10, 2009), and the value of stock options ($7.81 per share, from Note 9 to the financial statements in the Company's 2009 Form 10-K, filed on August 26, 2009) would be $90,250,000 per year, per director:

2009 Plan

| Award | Amount | | Value |
|-------|--------|---|-------|
| Stock options | 2,000,000 | | $15.62 million |
| SARs | 2,000,000 | | $15.62 million |
| RSU | 1,000,000 | | $29.01 million |
| PSU | N/A | | $10 million |
| Cash | N/A | | $10 million |
| Other | 1,000,000 | | $10 million |
| | | **Total:** | **$90,250,000** |

The Company's net earnings for the fiscal year ending June 30, 2009 were $1,707,000,000. Accordingly, the nine non-employee directors and the five Named Executive Officers could receive in one fiscal year an aggregate of $1,263,500,000, or 74.0% of last year's net earnings. This is an amount so great that it not only constitutes waste, but it shocks the conscience. Over a billion dollars of performance-based awards could be awarded under the 2009 Plan, but because the 2009 Plan is invalid and ineffective, such awards could also potentially subject the Company to hundred of millions of dollars in tax liability.

41.    The aforesaid breach of duties of loyalty and good faith and the misrepresentations to and omissions from the Proxy Statement have caused injury to the Company and its stockholders.

14

42.     Plaintiff has not made any demand on the Company's board of directors to institute this action against the individual defendants.

43.     The entire Board is either interested in the transactions and events alleged herein, and/or otherwise lacks independence. Of the nine members of the Board, all of them are eligible to participate in the 2009 Plan and are interested in the payments to be made under the 2009 Plan.

44.     Even in the absence of a traditionally interested (or non-independent) board, demand is excused under the facts at bar.

45.     The demand requirement and its exceptions are to encourage intra-corporate resolution of disputes and to obtain the business judgment of the board on whether the litigation is in the best interest of the corporation and its shareholders. However, where a stockholder sues the board of directors over an act that is not a decision concerning the management of the business and affairs of the corporation, but one of disclosure, the business judgment rule does not apply. Delaware law excuses demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent. The Board's conduct concerning the misrepresentations in, and the omissions from, a proxy statement are not matters of business judgment, and they are not protected by the business judgment rule for the following reasons:

a.     When, for the stockholders' annual meeting, a corporate board solicits stockholders' votes for directors and for the approval of the actions of the board and its committees, the board owes the stockholders a statutory and fiduciary duty of full and fair disclosure, meaning that all material facts must be fully and fairly disclosed and no material facts may be omitted. This duty of disclosure is a thing apart from the duty and authority to deal with

15

the business and property of the corporation. Courts give deference to a corporate board of directors as to questions of management of the corporation's business, but not as to questions of the board's performance of its disclosure duties, and for three reasons. First, a board's decision, even in good faith to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the subject. Second, although courts may not be well suited to making business decisions, courts are well suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures. Third, allegations that a proxy statement has materially false or misleading representations and omissions could raise issues as to the honesty and good faith of the directors.

        b.     As with Delaware law, under federal policy, there is no need for prior demand on the board of directors with respect to the claim of misrepresentations and omissions in the Proxy Statement.

        c.     At bar, the Proxy Statement contains materially false or misleading statements and omissions concerning the tax deductibility of payments under the 2009 Plan and the standards and variables used for determining bonuses under the 2009 Plan.

        46.     Payments under the 2009 Plan will not be tax deductible and therefore will constitute waste, which is not protected by the business judgment rule, and it excuses pre-suit demand.

        47.     The maximum awards per person under the 2009 Plan are so great that they not only constitute waste, but they shock the conscience. The board's approval of the 2009 Plan and their proposal to the stockholders to approve the 2009 Plan is cause to excuse pre-suit demand.

## COUNT I
### Violations of § 14(a) of the Exchange Act and SEC Regulations
### (Direct Claim Against All Defendants)

48.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate

them herein by reference.

49.     The Defendants caused materially false statements to be disseminated to the

stockholders in the Proxy Statement.

50.     The acts of the Defendants have injured the plaintiff directly by providing

materially false information that the SEC specifically requires in proxy statements.

51.     As a result of these actions of the Individual Defendants, the Plaintiff has been

and will be damaged.

52.     Plaintiff has no adequate remedy at law.

53.     To ameliorate the injury, injunctive relief is required in the form of corrective

disclosures and another vote on the Plan. The court should require the defendants to distribute to

its stockholders corrected disclosures for 2009 and hold a new vote.

## COUNT II
### Violations of § 14(a) of the Exchange Act, SEC Regulations and IRC § 162(m) and Its
### Accompanying Regulations
### (Derivative Claim On Behalf of the Company Against All Individual Defendants)

54.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate

them herein by reference.

55.     The acts of the Individual Defendants in distributing the false or misleading Proxy

Statement have injured the Company by interfering with proper governance on its behalf that

follows the free and informed exercise of the stockholders' right to vote for directors and for

compensation plans.

17

56.     As a result of these actions of the Individual Defendants, the Company has been

and will be damaged.

57.     Plaintiff has no adequate remedy at law.

58.     The court should require the Defendants to distribute to its stockholders corrected

disclosures for 2009 and hold a new vote.

**COUNT III**
**Breach of Fiduciary Duty**
**(Derivative Claim On Behalf of the Company Against Defendants Woertz, Mills, Smith,**
**Rice, Harjehausen, Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and**
**Westbrook ONLY)**

59.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate

them herein by reference.

60.     The conduct of **Defendants Woertz, Mills, Smith, Rice, Harjehausen,**

**Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook** in seeking

stockholder approval of the Plan without adhering to SEC regulations and IRC § 162(m) and its

accompanying regulations, causing the compensation to be non-tax-deductible, is irrational and

constitutes waste, and it has caused and will continue to cause injury to the Company. An

injunction requiring such approval upon full and fair disclosure and an equitable accounting are

required to redress those injuries.

61.     The acts of the Named Executive Officers in accepting non-tax-deductible

compensation under the 2002 Plan and the 2009 Plan, in including their names in the Proxy

Statement, seeking stockholder approval of the defective 2009 Plan, with false statements and

omissions, have been or will be a breach of their duty of loyalty to the Company in that these

constitute acts and omissions contrary to the best interests of the Company and as to which they

had a material conflict of interest.

18

62.     The acts of Defendants Woertz, Mills, Smith, Rice, Harjehausen, Batchelder,

Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook in paying and accepting non-

tax-deductible compensation under the 2002 Plan and the 2009 Plan and in failing to seek

stockholder reapproval of the 2002 Plan, but with objective criteria for a reasonable maximum

per Named Executive Officer, have been or will be disloyal to the Company, and not in good

faith.

63.     As a result of these actions of Defendants Woertz, Mills, Smith, Rice,

Harjehausen, Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook, the

Company has been and will be damaged.

64.     Plaintiff has no adequate remedy at law.

## COUNT IV
### Waste of Corporate Assets
### (Derivative Claim On Behalf of the Company Against Defendants Woertz, Mills, Smith, Rice, Harjehausen, Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook ONLY)

65.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate

them herein by reference.

66.     Defendants Woertz's, Mills', Smith's, Rice's, Harjehausen's, Batchelder's,

Buckley's, Carter's, Felsinger's, Haynes', Neto's, Moore's and Westbrook's payment of non-tax

deductible compensation under the 2002 Plan and the 2009 Plan to the Named Executive

Officers, and the Named Executive Officers' acceptance of the same have been or will be

irrational and constitute waste, and injure the Company by causing it to lose tax benefits and by

subjecting the Company to tax liability.

67.     Defendants Woertz, Mills, Smith, Rice, Harjehausen, Batchelder, Buckley, Carter,

Felsinger, Haynes, Neto, Moore and Westbrook approved the 2009 Plan, which provides for

maximum payments to the Non-Employee Directors and Named Executive Officers in amounts

so excessive, that no officer of director of ordinary sound business judgment would award, so as

to constitute waste.

68.     As a result of these actions of Defendants Woertz, Mills, Smith, Rice,

Harjehausen, Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook, the

Company has been and will be damaged.

69.     Plaintiff has no adequate remedy at law.

70.     Termination of the 2009 Plan, an injunction, an equitable accounting with

disgorgement, and reimbursement are required to redress the injury.

### COUNT V
### Unjust Enrichment
### (Derivative Claim On Behalf of the Company Against Defendants Woertz, Mills, Smith, Rice, Harjehausen, Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook ONLY)

71.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate

them herein by reference.

72.     Defendants Woertz, Mills, Smith, Rice, Harjehausen, Batchelder, Buckley, Carter,

Felsinger, Haynes, Neto, Moore and Westbrook have been or will be unjustly enriched as a result

of their acceptance of bonuses under a plan that was insufficiently disclosed to the stockholders

who were solicited to approve it.  Defendants Woertz, Mills, Smith, Rice, Harjehausen,

Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook acceptance of such

improperly paid compensation has or will constitute unjust enrichment.

73.     As a result of the actions of Defendants Woertz, Mills, Smith, Rice, Harjehausen,

Batchelder, Buckley, Carter, Felsinger, Haynes, Neto, Moore and Westbrook, the Company has

been and will be damaged.

74.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays for the following relief:

A.    For an order declaring void the vote of the stockholders for the 2009 Plan;

B.    For an order terminating the 2009 Plan and an injunction against payments under it;

C.    For an order requiring equitable accounting, with disgorgement, in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged herein;

D.    For an order awarding damages, together with pre- and post-judgment interest to the Company;

E.    For an order awarding plaintiff the costs and disbursements of this action, including reasonable accountants', experts' and attorneys' fees; and

F.    Granting such additional or different relief, including monetary relief, that the interests of justice or equity may require.

## JURY DEMAND

Plaintiff demands a trial by jury.

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
Tiffany J. Cramer (#4998)
222 Delaware Ave.
P.O. Box 1035
Wilmington, DE  19899
(302) 656-2500

*Attorneys for Plaintiff*

*Of Counsel*:

BARRACK, RODOS & BACINE
Alexander Arnold Gershon
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
Tel: (212) 688-0782
Fax: (212) 688-0783

BARRACK, RODOS & BACINE
Daniel E. Bacine
Mark R. Rosen
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600