IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HERBERT RESNIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-527-GMS |
| | ) | |
| PATRICIA A. WOERTZ, STEVEN R. | ) | |
| MILLS, DAVID J. SMITH, JOHN D. | ) | |
| RICE, EDWARD A. HARJEHAUSEN, | ) | |
| LEWIS W. BATCHELDER, GEORGE W. | ) | |
| BUCKLEY, MOLLIE HALE CARTER, | ) | |
| DONALD E. FELSINGER, VICTORIA F. | ) | |
| HAYNES, ANTONIO MACIEL NETO, | ) | |
| PATRICK J. MOORE, THOMAS F. | ) | |
| O'NEILL, KELVIN R. WESTBROOK and | ) | |
| ARCHER-DANIELS-MIDLAND | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ARCHER-DANIELS-MIDLAND | ) | |
| COMPANY, | ) | |
| | ) | |
| Nominal Defendant. | ) | |
| | ) | |
| VLADIMIR GUSINSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-603-GMS |
| | ) | |
| PATRICIA A. WOERTZ, GEORGE W. | ) | |
| BUCKLEY, MOLLIE HALE CARTER, | ) | |
| DONALD E. FELSINGER, VICTORIA F. | ) | |
| HAYNES, ANTONIO MACIEL NETO, | ) | |
| PATRICK J. MOORE, THOMAS F. | ) | |
| O'NEILL, KELVIN R. WESTBROOK and | ) | |
| M. BRIAN MULRONEY, | ) | |

| | ) |
| :--- | :--- |
| Defendants, | ) |
| | ) |
| -and- | ) |
| | ) |
| ARCHER-DANIELS-MIDLAND | ) |
| COMPANY, | ) |
| | ) |
| Nominal Defendant. | ) |
| | ) |

## MEMORANDUM

## I. INTRODUCTION

On June 16, 2010, the plaintiff, Herbert Resnik ("Resnik"), commenced Civil Action No.

10-527 for equitable relief against Patricia A. Woertz, Steven R. Mills, David J. Smith, John D.

Rice, Edward A. Harjehausen, Lewis W. Batchelder, George W. Buckley, Mollie Hale Carter,

Donald E. Felsinger, Victoria F. Haynes, Antonio Maciel Neto, Patrick J. Moore, Thomas F.

O'Neill, Kelvin R. Westbrook (collectively, the "Individual Defendants") and Archer-Daniels-

Midland Company ("ADM") (together with the Individual Defendants, the "defendants"),

alleging direct and derivative claims for violations of § 14(a) of the Securities Exchange Act

("SEA"), Securities and Exchange Commission ("SEC") Regulations and the Internal Revenue

Code ("IRC"), as well as derivative claims for breach of fiduciary duty, waste of corporate assets

and unjust enrichment. (C.A. No. 10-527, D.I. 1.) Presently before the court are: (1) Resnik's

motion to consolidate related cases (C.A. No. 10-527, D.I. 37; C.A. No. 10-603, D.I. 16); (2)

plaintiff Vladimir Gusinsky's ("Gusinsky") motion to appoint lead counsel (C.A. No. 10-527,

D.I. 47; C.A. No. 10-603, D.I. 25); (3) ADM's motion to dismiss Resnik's complaint pursuant to

Fed. R. Civ. P. 12(b)(6) (C.A. No. 10-527, D.I. 41); (4) the Individual Defendants' motion to

dismiss Resnik's complaint pursuant to Fed. R. Civ. P. 23.1, 12(b)(1) and 12(b)(6) (C.A. No. 10-527, D.I. 44); (5) ADM's motion to dismiss Gusinsky's complaint pursuant to Fed. R. Civ. P. 8(a), 12(b)(1), 12(b)(6) and 23.1 (C.A. No. 10-603, D.I. 20); and (6) the Individual Defendants' motion to dismiss Gusinsky's complaint pursuant to Fed. R. Civ. P. 23.1, 12(b)(1) and 12(b)(6) (C.A. No. 10-603, D.I. 22). For the reasons that follow, the court will grant Resnik's motion to consolidate, deny Gusinsky's motion to appoint lead counsel, grant in part ADM's motion to dismiss Resnik's complaint, deny the Individual Defendants' motion to dismiss Resnik's complaint and deny the defendants' motions to dismiss Gusinsky's complaint as moot.

## II. BACKGROUND[1]

### A. The Parties

Resnik is a citizen of New York and a stockholder of ADM. (C.A. No. 10-527, D.I. 1 at ¶¶ 1, 4.) ADM is a corporation organized under the laws of Delaware that processes soybeans, corn, wheat and cocoa to produce food ingredients, animal nutrition and industrial products. (Id. at ¶¶ 5, 14.) Defendant Patricia A. Woertz ("Woertz") is ADM's president, chief executive officer, and the chairman of the board of directors. (Id. at ¶ 6.) Defendants George W. Buckley,

---

[1]The following facts are taken primarily from Resnik's complaint, the 2009 proxy statement (the "Proxy Statement") and the 2009 Incentive Compensation Plan (the "2009 Plan"). Generally, on a motion to dismiss pursuant to Rule 12(b)(6), a court may not consider material outside of the pleadings. The court makes an exception, however, when a document becomes "integral to or explicitly relied upon in the complaint." *In re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (superseded by statute on other grounds)). Here, the court finds that Resnik has made the Proxy Statement and the 2009 Plan "integral" parts of the complaint. Thus, it considers them for the purpose of deciding the defendants' motion to dismiss.

Because the court grants Resnik's request to treat his complaint as the sole operative complaint, *see* discussion *infra* at III.B, the court primarily relies on the facts set forth in Resnik's complaint unless otherwise noted.

Mollie Hale Carter, Donald E. Felsinger, Victoria F. Haynes, Antonio Maciel Neto, Patrick J. Moore, Thomas F. O'Neill and Kelvin R. Westbrook, along with Woertz, are members of ADM's board of directors (the "Board Members").[2] (C.A. No. 10-527, D.I. 1 at ¶ 7.) ADM's executive officers include Woertz, Steven R. Mills, David J. Smith, John D. Rice, Edward A. Harjehausen (the "Executive Officers").[3] (Id. at ¶ 8.)

## B. Proxy Statement

On September 25, 2009, the Board Members authorized the distribution of the Proxy Statement to solicit the proxies of ADM's stockholders for the re-election of the Board Members, the ratification of Ernst & Young LLP's appointment as independent auditors for the fiscal year ending June 30, 2010, and the approval of the 2009 Plan. (Id. at ¶ 15.) The Proxy Statement, which describes the 2009 Plan's proposed incentive awards, requires the affirmative vote of the holders of a majority of the outstanding shares of ADM's common stock to approve the 2009 Plan. (Id. at ¶ 21.) The Proxy Statement indicates that as of September 25, 2009, ADM had 28,200 employees and nine Board Members, but it does not disclose the number of consultants and advisors covered by the 2009 Plan. (Id. at ¶¶ 18, 19.)

With respect to the proposed incentive awards in the 2009 Plan, the Proxy Statement declares that the awards are "designed to meet the requirements of Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Code"), regarding the deductibility of executive

---

[2]Gusinsky's complaint names M. Brian Mulroney ("Mulroney") as a "former director defendant" in addition to the above-listed Board Members. (C.A. No. 10-603, D.I. 1 at ¶ 19.) According to the complaint, Mulroney was a board member of ADM from 2003 until approximately November 5, 2009. (Id.)

[3]Until November 6, 2008, Lewis W. Batchelder was also a named executive officer of ADM. (Id. at ¶ 8.)

4

compensation." (C.A. No. 10-527, D.I. 42, ex. 1 at 47.) Specifically, the Proxy Statement

explains that

> [c]ompensation of the company's Chief Executive Officer, Chief Financial
> Officer and three other most highly compensated executive officers is subject to
> the tax deduction limits of Section 162(m) of the Code. Awards that qualify as
> "performance-based compensation" will be exempt from Section 162(m), thus
> allowing the company the full tax deduction otherwise permitted for such awards.
> If approved by the company's stockholders, the 2009 Plan will enable the
> Committee to grant awards that will be exempt from the deduction limits of
> Section 162(m) of the Code.

(C.A. No. 10-527, D.I. 42, ex. 1 at 52.) The Proxy Statement describes the criteria used to

determine whether the performance-based compensation exemption applies as follows:

> Performance shares, performance share units, performance units and cash-based
> awards entitle the participant to payment in amounts determined by the
> Committee based upon the achievement of specified performance goals during a
> specified term. With respect to awards intended to comply with the requirements
> of Section 162(m) of the Code, such performance goals will be based on one or
> any combination of two or more of the following criteria: earnings per share; net
> income before or after taxes; return on assets, net assets, equity, investment or
> capital; cash flow, cash flow return per share and cash flow return on investments
> (net cash flows divided by owners' equity); earnings before or after any one or
> more of taxes, interest, depreciation and amortization; gross revenues; and share
> price (including, but not limited to, growth measures and total stockholder return).
> The performance criteria selected may be applied on an absolute or comparative
> basis, and may relate to performance by the Company or any subsidiary, affiliate,
> division or business unit of the company. The Committee may define the manner
> of calculating the performance criteria it chooses to use in any performance
> period, including the use of "non-GAAP" adjustments to such criteria.

(Id. at 49-50.) The Proxy Statement provides that compensation should comply with § 162(m)

unless ADM's compensation committee determines that compliance with § 162(m) would not be

in the best interests of ADM and the tax consequences would be minimal:

> Although elements of our FY09 annual and long-term incentive awards are
> designed to be performance-based and comply with 162(m), the Committee
> retains the discretion to provide compensation that may not be tax deductible if it

feels these actions are in the best interests of the Company and its stockholders. The Committee believes that the amount of any expected loss of a tax deduction under Section 162(m) will be insignificant to the Company's overall tax position.

(Id. at 26.)

### C. The 2002 and 2009 Plans

The 2002 Incentive Compensation Plan (the "2002 Plan") explicitly stated that it would become effective on December 1, 2002 subject to approval by ADM's stockholders. (Id. at ¶¶ 17, 18.) In 2004, ADM requested stockholder approval of an amendment to the 2002 Plan regarding a new performance measure to receive favorable tax treatment in accordance with § 162(m) of the IRC, but it did not seek reapproval for the full plan and performance measures within five days as required by Treasury Regulation § 1.162-27(e)(4)(vi) to retain the tax deductibility of the performance payments. (Id. at ¶¶ 24, 25.) As a result, the 2007 deadline for reapproval passed and none of the 2002 Plan compensation paid for fiscal years ending in 2007, 2008, 2009 and 2010 in excess of $1 million per year was properly tax-deductible under IRC § 162(m). (Id.) Unlike the 2009 Plan, the 2002 Plan only applied to employees and not to non-employee directors, consultants and advisors. (Id. at ¶¶ 17, 18.)

ADM's shareholders approved the 2009 Plan by a 90.4% favorable vote at the annual meeting on November 5, 2009. (C.A. No. 10-527, D.I. 42 at 4.) The 2009 Plan proposes individual award limitations as follows:

> (a) <u>Stock Options</u>: The maximum aggregate number of Shares that may be covered by Awards of Stock Options granted in any one fiscal year to any one Participant shall be Two million (2,000,000).

> (b) <u>SARs</u>: The maximum aggregate number of Shares that may be covered by Awards of Stock Appreciation Rights granted in any one fiscal year to any one Participant shall be Two million (2,000,000).

6

(c) Restricted Stock/Restricted Stock Units: The maximum aggregate number of Shares that may be covered by Awards of Restricted Stock and Restricted Stock Units granted in any one fiscal year to any one Participant shall be One million (1,000,000).

(d) Performance Shares/Performance Share Units: The maximum aggregate number of Shares that may be covered by Awards of Performance Shares and Performance Share Units granted in any one fiscal year to any one Participant shall be One million (1,000,000).

(e) Performance Units: The maximum aggregate payout (determined as of the end of the applicable performance period) with respect to Performance Units granted in any one fiscal year to any one Participant shall be Ten Million Dollars ($10,000,000).

(f) Cash-Based Awards: The maximum aggregate payout (determined as of the end of the applicable performance period) with respect to Cash-Based Awards granted in any one fiscal year to any one Participant shall be Ten Million Dollars ($10,000,000).

(g) Other Stock-Based Awards: The maximum aggregate number of Shares that may be covered by Other Stock-Based Awards granted in any one fiscal year to any one Participant shall be One million (1,000,000), and the maximum aggregate payout with respect to Other Stock-Based Awards granted in any one fiscal year to any one Participant shall be Ten Million Dollars ($10,000,000).

(C.A. No. 10-527, D.I. 45, ex. 1 at A-6.) The total maximum incentive compensation, using the $29.01 stock price given in the Proxy Statement and the $7.81 value of stock options, would be $90,250,000 per year, per Board Member. (C.A. No. 10-527, D.I. 1 at ¶ 40.) ADM's net earnings for the fiscal year ending June 30, 2009 were $1,707,000,000, meaning that the nine non-employee Board Members and five Executive Officers could potentially receive, in one fiscal year, an aggregate of $1,263,500,000, or 74% of the previous year's net earnings. (Id.) The compensation committee of ADM's Board Members set the targets for annual incentives under the 2009 Plan but did not disclose them in the Proxy Statement, even though the targets were available on the date of the annual meeting. (Id. at ¶ 31.) The nine Board Members are all

7

eligible to participate in the 2009 Plan. (Id.)

### D. The *Gusinsky* Action

On July 14, 2010, Gusinsky filed a shareholder derivative action on behalf of ADM against the Board Members, alleging violations of fiduciary duties owed to ADM and waste of corporate assets. (C.A. No. 10-603, D.I. 1 at ¶ 1.) Gusinsky bases his allegations on purportedly false or misleading representations and omissions in the Proxy Statement in violation of § 14(a) of the SEA and SEC Rule 14a-9, mirroring Resnik's complaint. (Id. at ¶¶ 35-38, 43-50.) According to Gusinsky, because the Proxy Statement and the 2009 Plan fail to meet the requirements of § 162(m) of the IRC, § 14(a) of the SEA and SEC Rule 14a-9, all compensation paid to employees in excess of $1 million shall be disallowed as a deduction and will result in millions of dollars of unnecessary tax liability to ADM. (Id. at ¶ 69.)

## III. DISCUSSION

### A. Consolidation

Pursuant to Federal Rule of Civil Procedure 42(a), courts have the authority to consolidate actions involving a common question of law or fact. Fed. R. Civ. P. 42(a); *see also Oracle Corp. v. epicRealm Licensing, L.P.*, C.A. No. 06-414-SLR, 2007 WL 901543, at *5 (D. Del. Mar. 26, 2007). Decisions to consolidate cases are discretionary, but often courts balance considerations of efficiency, expense and fairness. *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142-43 (D. Del. 1999). The court "[has] broad power . . . to consolidate causes for trial as may facilitate the administration of justice." *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964).

In support of his motion to consolidate, Resnik contends that the 10-527 action should be

consolidated with *Vladimir Gusinsky v. Patricia A. Woertz, et al.*, C.A. No. 10-603-GMS

because Gusinsky's complaint mirrors Counts III and IV of Resnik's complaint, which allege

causes of action for breach of fiduciary duty and waste, respectively. (C.A. No. 10-527, D.I. 38

at 1-2.) Although Gusinsky's complaint does not allege direct and derivative claims under §

14(a) of the SEA or a derivative claim for unjust enrichment, Resnik contends that the actions are

based upon the same factual allegations, raise some of the same legal issues and are brought as

shareholder derivative actions by functionally identical shareholder plaintiffs on behalf of ADM

against the Board Members. (Id. at 2-4.) The defendants agree that consolidation is appropriate.

(C.A. No. 10-527, D.I. 51 at 1; C.A. 10-603, D.I. 54 at 2.) Gusinsky agrees that the cases share

common questions of law and fact, but opposes Resnik's motion to consolidate by characterizing

Resnik's action as a class action and alleging that Resnik failed to publish notice of pendency of

the action pursuant to the requirements of the Private Securities Litigation Reform Act

("PSLRA"). (C.A. No. 10-603, D.I. 48 at 3-4.)

  The court concludes that consolidation is appropriate because both actions share common

questions of law and arise out of identical facts and circumstances. Specifically, both cases

allege derivative causes of action on behalf of ADM against the Board Members for breach of

fiduciary duty and waste of corporate assets based on the materially false or misleading

statements made by the Board Members in the Proxy Statement. Moreover, both Resnik and

Gusinsky request disgorgement to compensate ADM for the losses it sustained as a result of the

Board Members' conduct as well as an award of the costs and disbursements of the present

actions. Gusinsky cites no authority in support of his contention that Resnik's complaint should

be characterized as a class action, and this court has found no basis for such a characterization.

*See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir. 1974) ("[T]he plaintiff, not the judicial system, controls whether or not to ask for class action treatment."). In light of the common factual and legal issues, the court concludes that it is in the interests of judicial economy to consolidate the actions brought by Resnik and Gusinsky.

## B. Appointment of Lead Counsel

"The court, if it sees fit, may appoint one or more attorneys as liaison counsel, lead counsel, or trial counsel for the consolidated cases" and "can assign the designated lawyers specific responsibilities." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2385 (3d ed. 2008). The selection of lead counsel in a shareholder derivative action filed in federal court is left to the sound discretion of the court. *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005). The court must determine "which counsel will best serve the interest of the plaintiffs" with respect to "experience and prior success record, the number, size, and extent of involvement of represented litigations, the advanced stage of proceedings in a particular suit, and the nature of the causes of action alleged." *Id.* (quoting 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9.35 at 388 (4th ed. 2002)). Other factors include "the quality of the pleadings, the economic interest of the plaintiffs, and the vigor with which the plaintiffs have prosecuted their lawsuits." *Id.*

Resnik moves to appoint his counsel, Barrack, Rodos & Bacine ("Barrack") as lead counsel and Chimicles & Tikellis LLP ("Chimicles") as liaison counsel pursuant to Fed. R. Civ. P. 42(a)(3) due to their extensive experience in complex litigation. (C.A. No. 10-527, D.I. 38 at 4-5.) In addition, Resnik contends that the court should designate his complaint as the sole operative complaint pursuant to Rule 42(a)(3) because it states additional claims for relief, and

drafting a consolidated complaint would cause unnecessary delay. (Id. at 6.) The defendants

take no position on the appointment of lead counsel or liaison counsel. (C.A. No. 10-527, D.I. 51

at 1; C.A. No. 10-603, D.I. 54 at 2.) Gusinsky contends that the court should appoint his counsel,

Rigrodsky & Long, P.A. ("R & L"), as lead counsel because Barrack filed Resnik's action in

violation of the PSLRA. (C.A. No. 10-603, D.I. 48 at 4.) Even if the court determines that

Barrack properly filed a direct claim for relief on behalf of Resnik, Gusinsky contends that

Barrack suffers from a conflict because it has sued ADM directly while simultaneously

representing ADM in a suit brought on its behalf against the Individual Defendants. (Id. at 5.) In

the alternative, Gusinsky contends that the court should appoint both Barrack and R & L as "co-

lead counsel" to serve the best interests of the shareholders. (Id. at 6-7.)

 The court concludes that Barrack shall serve as lead counsel with Chimicles serving as

liaison counsel.[4] The court rejects Gusinsky's contention that Barrack is conflicted from

representing Gusinsky due to Resnik's direct claim against ADM. Courts within the Third

Circuit have held that a conflict does not exist "on the mere basis of simultaneously suing a

corporation and bringing a derivative action on its behalf." *Miller v. Fisco*, 63 F.R.D. 132, 133-

34 (E.D. Pa. 1974). The court acknowledges that both Barrack and R & L are capable,

possessing extensive experience in complex litigation and having successfully represented parties

in class and derivative actions. However, the court concludes that Resnik's proposed lead and

liaison counsel are better qualified to serve in this particular action. Specifically, Resnik's

---

[4]Liaison counsel is a term generally used to describe attorneys whose primary duties for the group involve essentially administrative matters, such as communications with other counsel and the court. *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2385, at 77 n.3 (3d ed. 2008).

complaint addresses the same factual allegations and legal contentions as Gusinsky's complaint, but adds direct and derivative claims under § 14(a) of the SEA as well as a claim for unjust enrichment. Barrack, having drafted these additional causes of action, is in the best position to continue to litigate them. Moreover, Gusinsky acknowledges the quality of Resnik's filings by incorporating Resnik's arguments in his opposition to the defendants' motion to dismiss. (C.A. No. 10-603, D.I. 29 at 1 n.1; D.I. 30 at 1 n.1.)

The court further concludes that treating Resnik's complaint as the sole operative complaint will best serve the interests of the parties and the interests of judicial economy. As previously discussed, Resnik's complaint addresses all of the factual allegations and legal issues presented by Gusinsky's complaint in addition to several causes of action which were not alleged in Gusinsky's complaint. For these reasons, the court concludes that a consolidated complaint is not necessary and would serve only to delay the proceedings. The defendants' motions to dismiss Gusinksy's complaint (C.A. No. 10-603, D.I. 20, D.I. 22) shall therefore be denied as moot.

### C. Subject Matter Jurisdiction

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *UD Tech. Corp. v. Phenomenex, Inc.*, C.A. No. 05-842, 2007 WL 28295, at *3 (D. Del. Jan. 4, 2007) (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)) (internal quotations omitted). An attack pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the jurisdiction of the court to address the merits of the complaint. *Lieberman v. Delaware*, C.A. No. 96-523-GMS,

2001 WL 1000936, at *1 (D. Del. Aug. 30, 2001). Such a motion may challenge the court's

jurisdiction facially, based on the legal sufficiency of the claim, or factually, based on the

sufficiency of jurisdictional fact. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891

(3d Cir. 1977). Where the movant presents a facial challenge, the court must accept all factual

allegations in the complaint as true and may only consider the complaint and documents

referenced therein or attached thereto. *Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.*,

541 F. Supp. 2d 645, 648 (D. Del. 2008) (citing *Gould Elecs., Inc. v. United States*, 220 F.3d

169, 176 (3d Cir. 2000)). Where the movant presents a factual challenge, however, the court

need not confine its consideration to the allegations of the complaint nor accept those allegations

as true. *Mortensen*, 549 F.2d at 891.

The court construes the Individual Defendants' Rule 12(b)(1) motion to dismiss for lack

of standing and ripeness to be a facial attack on the complaint, rather than a factual one, because

it challenges the sufficiency of the complaint itself as opposed to challenging the facts underlying

the jurisdictional basis of the complaint. Therefore, the court accepts Resnik's allegations of

material fact as true and construes the complaint in favor of Resnik.

### 1. Standing

When addressing the question of standing, the court essentially asks whether the

particular litigant before it is entitled to have the court decide the merits of its particular dispute

or of the particular issues raised within it. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct.

2197, 45 L. Ed. 2d 343 (1975). To satisfy the three constitutional standing requirements, a

plaintiff must show that it has (1) suffered or will imminently suffer an injury, which is (2) fairly

traceable to the defendant's conduct and which is (3) likely to be redressed by a favorable federal

ruling on the matter. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993). On this first point, a plaintiff must show that this injury is "actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal quotations and citations omitted). In addition, a plaintiff who seeks injunctive relief must show that the defendant's conduct will likely cause injury in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). To have prudential standing, a plaintiff "must assert his own legal rights and interests." *Warth*, 422 U.S. at 499.

In support of their motion to dismiss for lack of subject matter jurisdiction,[5] the Individual Defendants contend that Resnik's claims for breach of fiduciary duty, waste and unjust enrichment should be dismissed because Resnik fails to plead an injury-in-fact, a causal connection between the injury and the challenged conduct and a redressable claim. (C.A. No. 10-527, D.I. 45 at 11-13.) In response, Resnik contends that he has standing because an imminent injury is all that is required to satisfy the standing requirement, and non-tax-deductible payments that were actually made pursuant to the 2002 Plan resulted in an actual injury. (C.A. No. 10-527, D.I. 52 at 8-10.) Resnik contends that misrepresentations in the Proxy Statement regarding tax deductibility caused the stockholders' injury by taking away their right to an informed vote on the 2009 Plan. (Id. at 10-11.) Moreover, Resnik contends that he meets the redressability requirement by proposing corrected disclosures and a new compensation plan that

---

[5]ADM joins in and adopts the Individual Defendants' arguments in support of their motion to dismiss with respect to Counts III, IV and V of Resnik's complaint for breach of fiduciary duty, waste and unjust enrichment, respectively. (C.A. No. 10-527, D.I. 42 at 2 n.2.)

complies with § 162(m) as well as disgorgement of funds paid to the defendants under the 2002 Plan. (Id. at 11-12.)

The court concludes that Resnik has standing under Counts III, IV and V of the complaint for breach of fiduciary duty, waste and unjust enrichment, respectively. Resnik sets forth imminent injuries and injuries-in-fact which include the non-tax-deductability of the compensation and the loss of tax benefits under the 2002 and 2009 Plans that were insufficiently disclosed to the stockholders. (C.A. No. 10-527, D.I. 1 at ¶¶ 60, 66-67, 72.) Resnik's complaint explains that these injuries are traceable to the Individual Defendants' efforts to obtain stockholder approval of the 2009 Plan without adhering to § 14(a) of the SEA and § 162(m) of the IRC, their failure to seek stockholder reapproval of the 2002 Plan, and their acceptance of non-tax-deductible compensation under the 2002 and 2009 Plans. (Id. at ¶¶ 60-62, 66-67, 72.) Resnik's request for relief in the form of termination of the 2009 Plan, an injunction, an equitable accounting, disgorgement and reimbursement would resolve the injuries to ADM. (Id. at ¶¶ 60, 70.) The court is satisfied that Resnik's contentions sufficiently show injury, causation and redressability to establish Resnik's standing.

## 2. Ripeness

Pursuant to Article III of the United States Constitution, this court may only exercise jurisdiction over cases or controversies arising under the laws of the United States. *See* U.S. Const. art. III, § 2. The Constitution imposes this requirement to prevent the federal judiciary from impermissibly expanding the scope of its mandate through the issuance of advisory opinions on hypothetical or abstract issues. *See Flast v. Cohen*, 392 U.S. 83, 95-97, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). To qualify as a legitimate case or controversy, a lawsuit "must be

15

definite and concrete, touching the legal relations of parties having adverse legal interests."

*Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461, 81 L. Ed. 617

(1937). In other words, there must be an actual dispute between adverse litigants concerning an

issue where there is a substantial likelihood that a decision by a federal court on the matter will

bring about some sort of desired change or effect. *See U.S. Nat'l Bank of Or. v. Indep. Ins.*

*Agents of Am., Inc.*, 508 U.S. 439, 446, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) (noting that

the suit must pursue "an honest and actual antagonistic assertion of rights by one [party] against

another" and that these "valuable legal rights . . . [would] be directly affected to a specific and

substantial degree" by a decision on the matter by a federal court) (internal quotations omitted).

The ripeness inquiry requires the weighing of two factors: "(1) the hardship to the parties of

withholding court consideration; and (2) the fitness of the issues for judicial review." *Artway v.*

*Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1247 (3d Cir. 1996).

The Individual Defendants contend that Resnik's causes of action for breach of fiduciary

duty, waste and unjust enrichment are not ripe because they depend on the tax consequences of

certain potential compensation awards without alleging any present effect on ADM's or the

stockholders' interests. (C.A. No. 10-527, D.I. 45 at 13-15.) In response, Resnik contends that

the case is ripe for adjudication because all of the relevant events have already occurred and

Resnik will suffer hardship if the court withholds consideration because the statute of limitations

for bringing an action under § 14(a) of the SEA will pass. (C.A. No. 10-527, D.I. 52 at 13-15.)

The court concludes that Resnik's claims for breach of fiduciary duty, waste and unjust

enrichment are fit for judicial review because the claims do not involve contingent or uncertain

events. In support of his state law claims, Resnik alleges injuries to ADM resulting from the

payment of unnecessary tax liabilities incurred as a result of misrepresentations and omissions in the Proxy Statement authorized for distribution to stockholders on September 25, 2009. Although Resnik's complaint does not cite to specific tax consequences or executive compensation payments which may be subject to disgorgement or reimbursement, these are factual issues to be developed through discovery. Moreover, the court concludes that deferring consideration of Resnik's state law claims will not serve the interests of judicial efficiency. The parties do not dispute the ripeness of Resnik's claims under § 14(a) of the SEA, and the remaining state law claims are based on the same facts and involve many of the same issues presented by the cause of action under § 14(a). Addressing the state law claims at this juncture will enable the parties to "avoid a multiplicity of litigation." *Indep. Bankers Assoc. of Am. v. Smith*, 534 F.2d 921, 928 (D.C. Cir. 1976).

In addition, ADM will be harmed if the court withholds consideration of Resnik's state law claims. Specifically, ADM has paid or will pay excessive tax liabilities under the 2009 Plan, which was approved by the stockholders due to the allegedly false or misleading statements in the Proxy Statement. *See Seinfeld v. Barrett*, C.A. No. 05-298-JJF, 2006 WL 890909, at *4 (D. Del. Mar. 31, 2006). Disgorgement and reimbursement to remedy those payments is only available under Resnik's state law claims. Having concluded that the case is fit for judicial review and ADM will suffer a hardship if the court withholds consideration, the court will deny the motion to dismiss for lack of subject matter jurisdiction.

## D. Failure To State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). A complaint does not need detailed factual allegations, but it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The assumption of truth does not apply, however, to legal conclusions couched as factual allegations, or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted).

## 1. Section 14(a) of the Securities Exchange Act

Rule 14a-9, promulgated by the SEC pursuant to § 14(a) of the SEA, provides that:

> [n]o solicitation subject to this regulation shall be made by means of any proxy statement . . . which, at the time . . . it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9. To state a claim under § 14(a) of the SEA and Rule 14a-9, a plaintiff must establish that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (quoting *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004)).

In addition, a plaintiff alleging a private right of action must meet the heightened pleading standards of the PSLRA, including its loss causation requirement. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 165, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008). Under these standards, the complaint in a § 14(a) action must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, all facts with particularity on which that belief is formed. *See* 15 U.S.C. 78u-4(b)(1). Moreover, the complaint must set forth a causal connection between the material misrepresentation and an economic loss to the plaintiff. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (concluding that "allowing a plaintiff to forgo giving any indication of the economic loss and proximate cause that the plaintiff has in mind would bring about the harm of the very

19

sort the statutes seek to avoid").

The court concludes that Resnik's derivative claim pursuant to § 14(a) of the SEA withstands ADM's motion to dismiss under Rule 12(b)(6), but Resnik's direct claim fails to meet the heightened pleading requirements of the PSLRA. With respect to the materiality requirement, Resnik sufficiently establishes the existence of three material misrepresentations and omissions in the Proxy Statement. "Information is deemed material for purposes of a § 14(a) claim 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976)). The materiality of the disclosure does not depend on the amount of money involved, but rather on its purpose of informing the stockholders. *Shaev v. Saper*, 320 F.3d 373, 384 (3d Cir. 2003). According to Third Circuit precedent, the risk that a bonus might not be tax deductible and the information necessary to determine whether it is deductible are material to the average investor at the time of the Proxy Statement, regardless of the IRS's ultimate determination on the matter. *Id.*

Resnik first alleges that the Proxy Statement fails to disclose the number of consultants or advisors covered by the 2009 Plan and bases the materiality of the omission on 17 C.F.R. § 240.14a-101, Item 10(a)(1), which states that the Proxy Statement must "indicate the approximate number of persons in each such class" who are eligible to participate in a compensation plan. (C.A. No. 10-527, D.I. 1 at ¶¶ 18, 19.) The number of individuals in a particular class who are eligible to participate in the 2009 Plan would likely be considered material information by investors wanting to know the extent and impact of the 2009 Plan, and

20

this information is treated as material under the regulations cited by Resnik. The court concludes that Resnik sufficiently pleads the materiality of the Proxy Statement's omission of how many consultants and advisors are covered by the 2009 Plan.

Second, Resnik alleges that the Proxy Statement misrepresents the requirement for an affirmative vote by a majority of stockholders to approve the 2009 Plan because the 2009 Plan does not itself state that it required approval by the majority of the stockholders. (C.A. No. 10-527, D.I. 1 at ¶ 21.) However, the Proxy Statement clearly states that the affirmative vote of the majority is required, and the 2009 Plan does not present a conflict by stating otherwise. In fact, the 2009 Plan states that it shall become effective on November 5, 2009, which implies that shareholder approval is required because the date coincides with the stockholders' vote to approve the 2009 Plan. Therefore, the court concludes that Resnik failed to establish the materiality of this alleged misrepresentation in his pleading.

Third, Resnik alleges that the Proxy Statement misrepresents the 2009 Plan's incentive awards as being designed to comply with § 162(m) of the IRC. (Id. at ¶¶ 23-26.) Resnik points to 17 C.F.R. § 229.402(b)(2)(xii), which requires the disclosure of the "impact of the accounting and tax treatments of the particular form of compensation" for the Executive Officers. (Id.) Resnik indicates that the Proxy Statement is misleading in this regard because it indicates that it was "designed to be performance-based and comply with 162(m)," when in fact, the tax deductibility of ADM's awards expired in 2007. (Id.) The loss of the tax deductible status of these compensation awards would be highly material to ADM and the stockholders, who face substantial tax liability as a result of the misrepresentations contained in the Proxy Statement. The court concludes that Resnik sufficiently pleaded the materiality of the Proxy Statement's

21

misrepresentation that the 2009 Plan's incentive awards are designed to comply with § 162(m) of the IRC.

Fourth, Resnik alleges that the Proxy Statement fails to disclose with specificity the performance goals under which the compensation is to be paid. (Id. at ¶¶ 27-31.) Resnik contends that although the Proxy Statement and the 2009 Plan list a series of predetermined business goals that must be achieved, the ultimate award of bonuses intended to be deductible under § 162(m) is left to the discretion of the compensation committee and is therefore substantially uncertain. (Id.) According to Resnik, the Proxy Statement does not disclose whether improved performance is required to achieve a bonus, how difficult it will be for ADM to achieve the undisclosed target levels or how the target levels will be calculated from the audited financial statements. (Id.) The court concludes that Resnik's complaint sufficiently demonstrated the materiality of the misrepresentations and omissions in the Proxy Statement because these considerations could very likely preclude the compensation awards from being tax deductible under § 162(m) of the IRC.

With respect to the causation requirement, the court concludes that Resnik's derivative claim establishes the material misrepresentations and omissions in the Proxy Statement as the essential link in the passage of the 2009 Plan. Resnik's derivative claim under § 14(a) alleges that the misrepresentations in the Proxy Statement harmed ADM by "interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors and for compensation plans." (Id. at ¶ 55.)

However, the court concludes that Resnik's direct claim under § 14(a) fails to meet the heightened pleading standards of the PSLRA because it does not allege an economic injury and,

as a result, fails to satisfy the loss causation requirement. To show loss causation, the plaintiff must demonstrate that the defendant "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). "In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm." *N.Y.C. Employees' Retirement Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010) (citing *Grace v. Rosenstock*, 228 F.3d 40, 46 (2d Cir. 2000)). Resnik's direct claim, which alleges a deprivation of his right to a fully informed stockholder vote caused by the misrepresentations in the Proxy Statement, seeks only injunctive relief in the form of corrective disclosures and another vote on the 2009 Plan. (C.A. No. 10-527, D.I. 1 at ¶ 53.) This injury is insufficient to meet the loss causation requirement, and as a result, Resnik's direct claim for relief under § 14(a) fails to state a claim upon which relief can be granted.

## 2. Breach of fiduciary duty

Delaware law imposes fiduciary duties of care and loyalty on corporate officers and directors which extend to both the corporation and its shareholders. *See Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009); *Malone v. Brincal*, 722 A.2d 5, 10 (Del. 1998). The duty of due care obligates corporate directors and officers to "act on an informed basis." *Cede & Co. v. Technicolor*, 634 A.2d 345, 367 (Del. 1993). However, "duty of care violations are actionable only if the directors [or officers] acted with gross negligence." *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 750 (Del. Ch. 2006). "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede*, 634 A.2d at 361.

23

The court concludes that Resnik's claim for breach of fiduciary duty is sufficient to withstand a motion to dismiss under Rule 12(b)(6). Specifically, Resnik alleges that the Individual Defendants sought stockholder approval of the 2009 Plan without adhering to the SEC regulations and § 162(m) of the IRC, thereby causing the compensation to be non-tax-deductible. (C.A. No. 10-527, D.I. 1 at ¶ 60.) Moreover, Resnik alleges that the Proxy Statement contained material misrepresentations and omissions because the Individual Defendants acted negligently and contrary to the best interests of the corporation. (Id. at ¶ 61.) The court concludes that these allegations, viewed in the light most favorable to Resnik, are sufficient to state a claim against the Individual Defendants for breach of fiduciary duty.

### 3. Waste

"The pleading burden on a plaintiff attacking a corporate transaction as wasteful is necessarily higher than that of a plaintiff challenging a transaction as 'unfair' as a result of the directors' conflicted loyalties or lack of due care." *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 892 (Del. Ch. 1999) (citing *In re 3COM Corp. S'holders Litig.*, C.A. No. 16721, 1999 WL 1009210, at *11 (Del. Ch. Oct. 25, 1999)). To plead a claim of waste, the plaintiff must allege facts showing that "no person of ordinary sound business judgment" could view the benefits received in the transaction as "a fair exchange" for the consideration paid by the corporation. *Michelson v. Duncan*, 407 A.2d 211, 224 (Del. 1979) (internal quotations omitted). However, a claim for waste survives a motion to dismiss if the court cannot conclude that "there is no reasonably conceivable set of facts under which [the plaintiff] could prove a claim of waste." *Weiss v. Swanson*, 948 A.2d 433, 450 (Del. Ch. 2008).

Taking the allegations of Resnik's complaint as true, the court concludes that it is

reasonably conceivable that Resnik can prove a claim for waste. Specifically, Resnik's complaint alleges that ADM faces substantial and avoidable tax liability and incentive compensation payments of up to $90,250,000 per Board Member as a result of the misrepresentations in the Proxy Statement. (C.A. No. 10-527, D.I. 1 at ¶¶ 66, 67.) Taking these facts as true, the court concludes that no person of ordinary sound judgment could view the benefits received in the transaction as a fair exchange for the consideration paid by ADM. Therefore, the court shall deny the Individual Defendants' motion to dismiss with respect to Resnik's claim for corporate waste.

### 4. Unjust enrichment

Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008) (citations omitted). To establish a claim for unjust enrichment, a plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999). Unjust enrichment is a theory of recovery to remedy the absence of a formal contract. *Bakerman v. Sidney Frank Importing Co., Inc.*, C.A. No. 1844-N, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006). Therefore, claims of unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain. *In re Student Fin. Corp.*, C.A. No. 03-507-JJF, 2004 WL 609329, at *7 (D. Del. Mar. 23, 2004).

Considering the facts of the complaint in the light most favorable to Resnik, the court

25

concludes that Resnik's claim for unjust enrichment withstands the Individual Defendants' motion to dismiss for failure to state a claim. Specifically, Resnik's complaint alleges that the Individual Defendants accepted compensation under the 2009 Plan which was not sufficiently disclosed to the stockholders, resulting in an enrichment to themselves at the expense of ADM. (C.A. No. 10-527, D.I. 1 at ¶¶ 72-73.) Accepting the facts of the complaint as true, the 2009 Plan is defective on its face and is therefore not a valid contract. The Individual Defendants benefitted from the compensation they received under the 2009 Plan while ADM was harmed. As a result, Resnik's claim for unjust enrichment survives the Individual Defendants' motion to dismiss.

## C. Pleading Requirements in Derivative Actions

Pursuant to Federal Rule of Civil Procedure 23.1, the plaintiff must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1. Rule 23.1 only addresses the adequacy of the plaintiff's pleadings. "The substantive requirements of demand are a matter of state law." *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992). Under Delaware law, "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds). In determining whether demand would have been futile,

> [t]he trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.

*Levine v. Smith*, 591 A.2d 194, 205 (Del. 1990) (overruled on other grounds). If either of these

two inquiries is met, demand is excused. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005).

Under the first prong, "directorial interest exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders." *Blasband*, 971 F.2d at 1048. A director lacks independence when the director's decision is based on extraneous influences, rather than the merits of the transaction. *Id.* To find that demand is futile due to director interest or a lack of independence, a majority of the board of directors, or one-half of an evenly-numbered board, must be interested or lack independence. *Beam v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004). When the entire board is interested in the transaction, the demand "inquiry ceases . . . [because] futility of demand has been established by any objective or subjective standard." *Aronson*, 473 A.2d at 815.

If the first prong is not satisfied, a presumption arises that the board's actions were the product of a valid exercise of business judgment. *Beam*, 845 A.2d at 1049. To satisfy the second prong, a plaintiff must plead sufficient particularized facts to "raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan*, 906 A.2d at 824 (quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003)) (internal quotations omitted). At the motion to dismiss stage, the court considers the well-pleaded allegations of the complaint, the documents incorporated into the complaint by reference and judicially-noticed facts, drawing all reasonable inferences from the complaint's allegations in favor of the plaintiff. *See Weiss*, 948 A.2d at 441; *see also White v. Panic*, 783 A.2d 543, 549 (Del. 2001).

As an initial matter, the court acknowledges that "[e]ach derivative claim for which no

demand was made on the board must be evaluated independently to determine whether demand was futile as to that claim." *MCG Capital Corp. v. Maginn*, C.A. No. 4521-CC, 2010 WL 1782271, at *7 (Del. Ch. May 5, 2010) (citing *CalPERS v. Coulter*, 2002 WL 31888343 (Del. Ch. Dec. 18, 2002)). However, because all of the claims which are the subject of this motion to dismiss are based on the same set of challenged transactions and are grounded in the same Board Members' actions with respect to the 2009 Plan, the same analysis will suffice for all.

The court concludes that Resnik sufficiently pleaded facts indicating that the Individual Defendants' independence in this matter was compromised. Each count of Resnik's complaint is based on the passage of the 2009 Plan, which provides substantial compensation benefits for every Board Member. Because the Board Members had a substantial financial interest in the outcome of the stockholders' vote on the 2009 Plan, they lacked independence to consider objectively whether the transaction was in the best interest of ADM and the stockholders. In fact, the allegations in the complaint indicate that the 2009 Plan benefitted the Board Members at the expense of ADM by providing for steep increases in compensation and failing to protect against increased tax liabilities. *See, e.g.*, *Green v. Phillips*, C.A. No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996) ("complaint must allege particularized facts showing that the corporation, in essence, gave away assets for no consideration" to state a claim for corporate waste). Resnik has sufficiently established reasonable doubt regarding the Board Members' independence and disinterestedness and demonstrated that demand would be futile under the first prong of the *Aronson* test. Therefore, the court need not address the second prong of the disjunctive test. *See MCG Capital*, 2010 WL 1782271, at *16.

## IV. CONCLUSION

For the reasons stated above, the court: (1) grants Resnik's motion to consolidate (C.A. No. 10-527, D.I. 37; C.A. No. 10-603, D.I. 16); (2) denies Gusinsky's motion for appointment of lead counsel (C.A. No. 10-527, D.I. 47; C.A. No. 10-603, D.I. 25); (3) denies the Individual Defendants' motion to dismiss Resnik's complaint (C.A. No. 10-527, D.I. 44); (4) grants in part ADM's motion to dismiss Resnik's complaint (C.A. No. 10-527, D.I. 41); (5) denies ADM's motion to dismiss Gusinsky's complaint as moot (C.A. No. 10-603, D.I. 20); and (6) denies the Individual Defendants' motion to dismiss Gusinsky's complaint as moot (C.A. No. 10-603, D.I. 22). An appropriate order shall issue.

Dated: March 28, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HERBERT RESNIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-527-GMS |
| | ) | |
| PATRICIA A. WOERTZ, STEVEN R. | ) | |
| MILLS, DAVID J. SMITH, JOHN D. | ) | |
| RICE, EDWARD A. HARJEHAUSEN, | ) | |
| LEWIS W. BATCHELDER, GEORGE W. | ) | |
| BUCKLEY, MOLLIE HALE CARTER, | ) | |
| DONALD E. FELSINGER, VICTORIA F. | ) | |
| HAYNES, ANTONIO MACIEL NETO, | ) | |
| PATRICK J. MOORE, THOMAS F. | ) | |
| O'NEILL, KELVIN R. WESTBROOK and | ) | |
| ARCHER-DANIELS-MIDLAND | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ARCHER-DANIELS-MIDLAND | ) | |
| COMPANY, | ) | |
| | ) | |
| Nominal Defendant. | ) | |
| | ) | |
| VLADIMIR GUSINSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-603-GMS |
| | ) | |
| PATRICIA A. WOERTZ, GEORGE W. | ) | |
| BUCKLEY, MOLLIE HALE CARTER, | ) | |
| DONALD E. FELSINGER, VICTORIA F. | ) | |
| HAYNES, ANTONIO MACIEL NETO, | ) | |
| PATRICK J. MOORE, THOMAS F. | ) | |
| O'NEILL, KELVIN R. WESTBROOK and | ) | |
| M. BRIAN MULRONEY, | ) | |

```
                                    )
        Defendants,                 )
                                    )
    -and-                           )
                                    )
ARCHER-DANIELS-MIDLAND              )
COMPANY,                            )
                                    )
        Nominal Defendant.          )
                                    )
```

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1. Resnik's motion to consolidate (C.A. No. 10-527, D.I. 37; C.A. No. 10-603, D.I. 16) is

GRANTED.

2. Gusinsky's motion to appoint lead counsel (C.A. No. 10-527, D.I. 47; C.A. No. 10-

603, D.I. 25) is DENIED.

3. The Individual Defendants' motion to dismiss Resnik's complaint (C.A. No. 10-527,

D.I. 44) is DENIED.

4. ADM's motion to dismiss Resnik's complaint pursuant to Fed. R. Civ. P. 8(a) and

12(b)(6) (C.A. No. 10-527, D.I. 41) is GRANTED with respect to Count I and DENIED in all

other respects.

5. ADM's motion to dismiss Gusinsky's complaint (C.A. No. 10-603, D.I. 20) is

DENIED as moot.

6. The Individual Defendants' motion to dismiss Gusinsky's complaint (C.A. No. 10-603, D.I. 22) is DENIED as moot.

Dated: March 28, 2011

_____
CHIEF, UNITED STATES DISTRICT JUDGE